Case number 221022, Yolanda Peatross v. Liberty Mutual Personal Insurance Company. All argument not to exceed 15 minutes per side. Mr. McRae, you may proceed for the appellant. Good morning, Your Honors. Doug McRae appearing on behalf of the plaintiff appellant, Yolanda Peatross. I would like to reserve four minutes for rebuttal. That's fine. You may proceed. All right. Well, Your Honors, at this point, there's been over 100 pages of briefing on this issue, and there's only so much one can squeeze into, you know, 11 minutes. And so I'm going to focus on what I think is the primary issue in this case, which is the Essential Insurance Act. There are some issues regarding disputed factual matters, in particular, you know, whether my client got just the signature page or the entire supplemental application, but they don't really matter, assuming that the court decides the statutory issue in accordance with the language of the statute. So in that regard, the purpose of the Essential Insurance Act, as it's set forth in this publication that I provided, the avoidable crisis report, was that as of the late 70s, we had this, what was characterized either by the governor or the insurance commissioner, I can't remember, as a conglomeration of myths, notions, perceptions, and beliefs that were subjective. These were being employed by the insurance companies. And between the governor and the insurance commissioner at that time, they decided it would be logical to come up with a system where there was a guaranteed right to coverage as long as the applicant satisfied certain basic criteria that would be set forth in underwriting rules drafted by the legislature. What was remarkable about this act is that it stripped away underwriting discretion from insurance companies with respect to home and auto insurance, and this is a home insurance case before you today. And so this happened two years after this publication, and the result was two lists of permissible underwriting rules set forth in Michigan's statutory scheme. And there's about 20 underwriting rules that can be employed here legally. Everything else violates the statute. The one that matters in this case is from MCL 500.21032J, and it's the only one that has to do with property taxes. So the bottom line is insurance companies can't make up their own standards. They're bound to the statutory rules, and they have to, other statutes within the insurance code provide that these rules have to be incorporated in their own underwriting rules. Those underwriting rules have to be filed with the state, and they have to be available to the public. And to Liberty's credit, it did that. It copied and pasted the statutory rule into its own underwriting rules, provided them to the state, made them available for publication, saying, yes, this is the underwriting rule that we're going to apply, which is identical to the statute. So what is that rule? It's that fourth again in the statute, the subsection that I just mentioned. It says, basically, an insurer can refuse home insurance only based upon property tax related issues, only if the applicant is, and I quote, a person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for two or more years at the time of renewal or application. So this is a mandatory standard, all right? It has two components. One relates to specifically what taxes are at issue. It's not the taxes on the building. It's the taxes applicable to the applicant with respect to the building. And then there's a two-part timing component. There's some ink devoted to explaining how I have said, well, you know, the court has to focus on this part of the statute and ignore this other part of the statute. That's not my position. My position is that the court needs to give effect to every part of this statute. Counsel, excuse me for interrupting you. Before you spend too much time on this, I'm wondering if the Essential Insurance Act is even relevant to this case in the way you are presenting it. As I understood, the purpose of the statute was to make it possible for uninsurable people or high-risk properties to obtain insurance in the first place so that there would be a high-risk pool available so that people who would otherwise not be insurable could obtain insurance. And that's not the case with your client. Your client obtained a policy or was granted a policy, but the issue is whether she complied with the contractual terms of the policy, which seemed to be a little bit different than her need to avail herself of the Essential Insurance Act to obtain insurance in the first place. So I'm just not sure whether the statute is relevant to the issues we're looking at here. What do you have to say about that? What you're describing, although I haven't dove into that part of the statute at this time, sounds like Michigan basic and basic insurance. It's the insurance of last resort. This is a different aspect of the Act, and it applies to home insurance generally speaking. It's binding upon all state. It's binding upon auto owners. It's not the insurance of last resort, which would be Michigan basic in the state of Michigan. This simply says that with respect to any, and they specifically go into this in the publication, the avoidable problem publication. With respect to any insurer conducting substantial business in the state of Michigan, they are stuck with, they have no discretion, and are stuck with roughly 20 mandatory underwriting rules that they have to apply in the context of underwriting with respect to home insurance. And there's a separate set for auto insurance. I'm not going to forget what you're talking about, Your Honor, but I believe that's a separate part either of the same Act or of another Act that's also part of Michigan's insurance code. This one applies to all insurance companies. I don't think counsel would disagree with me on that particular point. Okay, we'll look into that. But here the claim is, by the insurance company at least, that your client failed to disclose the information that was required as a part of the application process or gave incorrect or misleading information that was utilized in the processing of her application. How do you deal with that argument? Well, that is their position, and there's a factual dispute over that. My client indicated at her deposition that she spoke with their captive agent who was treated as part of Liberty Mutual here and indicated that, to her knowledge, the taxes were current, something like that. He put in the unequivocal answer that, yes, the taxes are current. However, it's, again, I think a moot point because the application that she allegedly filled out, we know she signed the signature page. We don't think she saw the entire thing, and there's nothing that contradicts that, really. But that particular document, which is entitled Supplemental Application, employs a standard that, with respect to property taxes on the house, that is contrary to the statute. The application asks, basically, are the taxes overdue with respect to the house, and have they been overdue for two years? That is not the standard that the statute allows Liberty Mutual to employ. Liberty Mutual only allows it to employ one underwriting rule. It has no discretion here. It can't put something different in its form. It's the same underwriting rule that Liberty copied into its own underwriting rules, filed with the state, and made available to the public. That one is that the taxes... Mr. McRae, there's another question for you. As it relates to the statute, you would agree that Ms. Pete Ross' property taxes were delinquent. That part is not disputed. Is that right? As of the time... The position the defendant has taken on this is that as of the time she bought the property, her taxes became delinquent with respect to the property. So she might qualify as a person, at the time of application, whose taxes are delinquent. But the statute also requires that they have been delinquent for a period of two years for them to refuse a policy. There is no argument that that occurred because she bought the house the same day she applied. So they would have had to have been delinquent, as to Pete Ross, not just on the house that somebody else owned at that time, but as to Pete Ross and say, you know, 4th of July in 2017 and Christmas of 2017 and through all of 2018. And that was not the case. Mr. McRae, do you have a... Can you cite us a case that would support the argument that you're making? Because the cases that I've reviewed seem to suggest that, you know, under Michigan law, property is purchased pursuant to any... or subject to any existing liens. And cases seem to be more supportive of Liberty's position than yours. Is there a case you can point us to that would... you think is the best proposition for your position? Well, the problem is, Judge, with the cases in the Eastern District of Michigan, Liberty got a little bit of a windfall. I mean, we have the initial case in 2011, and it was an improper gentleman, didn't file a response to summary judgment. So he lost. The next one, two-and-a-half-page brief, no law cited. That insured loss. The next one, the brief was filed seven weeks late, was stricken as noncompliant, as waived, and also cited no law, so that one lost. You've got all this series of cases in the Eastern District of Michigan addressing the same fact pattern, but only one of them even touched on the relevant law. What's the best case for your position? Or is there one? I would say there is no case. There's the statutory language, because the issue hasn't been addressed in the Eastern District of Michigan, with one exception where they touched on it, and the judge decided that one contrary to the statutory language. I think maybe Carter was the name of that one. It was a very dismissive decision. It was, well, because the statute's incorporated into the application, plaintiff loses. And the problem was, if you look at both the application and the language and the statutory language and apply them to the plaintiff in that case, well, the answer would have been different if you'd had a question on the application based upon the statute. So it shows that it wasn't incorporated. That's the one case that actually dealt with the issue, and in that one the plaintiff lost. Okay, your initial time has expired. I want to see if there are any other questions at this point. You have your four minutes of rebuttal, Mr. McQuaid. Let's hear next from Ms. DiLorenzo. Thank you, Your Honor. Thank you. Good morning, Your Honors. Josephine DiLorenzo on behalf of Liberty Mutual. Thank you for permitting me to do this argument at remote. I'm sorry I got COVID at such an inconvenient time. We're asking this court to affirm the district court's order. As we were just discussing, plaintiff's position is that when issuing the insurance policy, Liberty Mutual improperly considers whether taxes on the dwelling to be insured are delinquent, rather than considering whether the applicant's taxes are delinquent. But it's our position that it's essentially the same thing, because again, the language of the statute says a person whose real property taxes with respect to the dwelling insured or to be insured, that's what we're looking at. And so we pointed out, and the district court agreed that under MCL 211.40, taxes become a lien on the real property, and that continues until the taxes are paid. We cited one case, and the district court cited several others standing for the proposition that delinquent taxes attached to the property, not a person. So a buyer becomes responsible for the seller's debt. So this means that plaintiff's property taxes, with respect to the Santa Rosa property, had not been delinquent for just two hours. Instead, at the time she became the owner of the property, and became responsible for the taxes with respect to that dwelling, it was proper to say that those taxes have been and are delinquent. So plaintiff says that we don't properly account for that have been in our language, but I think the district court had a good way of explaining it. And it doesn't support plaintiff's position that this statute doesn't ever apply to a new buyer, because a buyer who immediately pays off delinquent taxes is still an eligible person because their taxes no longer are delinquent, even if they have been. And second, a new buyer could be an eligible person if the taxes on the home are delinquent, but they haven't been for years, because that would give the new buyer time to bring the taxes current. I think the bottom line is that if you accept plaintiff's interpretation, then the statute just doesn't address, and there's no ability for an insurance company to consider whether the purchaser of a new home seeks to insure a dwelling with delinquent property taxes. And so we suggest that that is an absurd result. Can I ask you a question that goes to a little bit of a different issue? Sure. You've got this Bristol West Insurance Company case that seems to suggest or hold that there's no private cause of action for alleged violations of this statute issue. Do you have a position on whether this is a matter that should even be before this court? I think that that could be a good way for you to get rid of it. I believe that, I think what plaintiff is trying to say, that they're not really suing for a violation of that act, they're trying to sue for a violation of the contract, and that it should be consistent with that. But I suppose if that's what they're relying on, if they don't have a right to enforce it, then... Well, I guess I'm wondering what is Liberty's position on the issue, whether there's a private right to cause of action or not. Well, yes, we would agree with that. Okay. Nothing further? Well, I would say, so I guess it's a yes. If we don't want to, if that, there is no private right of action, I think that's to be clear, so maybe we don't have to, I didn't have to spend 53 pages briefing that whole issue. But then the second part, which we also spent some time on, is just the rescission issue. So would you like me... That's fine. I think Judge Mathis has a question. Is it your position that they brought a claim under the act, or is their claim for breach of contract or declaratory judgment related to the insurance contract? I believe the complaint said, I think it was breach of contract. I can't remember if there was a declaratory judgment count, but I know for sure it was breach of contract. But they were relying on this interpretation of the act to say that Liberty is in violation of it. So in that sense, that's, I suppose, not something that they can raise. So we did focus a lot on just the rescission issue in our briefing. Counsel, do you have a case that would dispose of this issue you're opposing? The Michigan counsel said that he couldn't find anything in the Eastern District of Michigan. I assume he's making reference to federal cases. But as a matter of state law, there might be a Michigan state case or a case from the Michigan Supreme Court that would be dispositive of a real property issue in Michigan such as this. Do you have a case for your position that would dispose of this issue? No, Your Honor. I updated the research yesterday, and I didn't see that the state court has addressed this issue. So the best one is the Eastern District case. It's Carter v. Liberty Mutual. So we cited that in our brief. Do you have that? Would you like me to cite to that? I think we have that one, yeah. Okay. No, when we were doing the initial briefing, there weren't any state cases that addressed this that I could find, and I checked again yesterday, and I didn't see anything. All right. So I guess just to sum up really quick, if we're just going to look at the law on rescission and the policy language, then I would just point out that under Michigan law, rescission is justified even in cases of innocent misrepresentation. And so all you need is a false statement. And then to find reliance, reliance exists when the misrepresentation relates to the insurer's underwriting guidelines. And so we have that in our rescission letter and the testimony from Mr. Marangoni that this policy would not have been issued if they had known the property taxes were delinquent. And then as far as whether the plaintiff had all the pages, I don't think we need to get into a factual dispute, because the bottom line is that she signed a statement that said, I have read and understand all the above questions. I can confirm that the facts stated in my application are true. So there's plenty of case law in Michigan that says that a signature on an application for insurance warrants the answers to be true and complete. And I discussed all those cases on page 44 of my brief. So for that reason, because of the material misrepresentation in this false statement, the rescission was proper. And that's all I have unless you have any questions. Thank you, Ms. DiLorenzo. And we'll hear again from Mr. McRae for four minutes of rebuttal. During Ms. DiLorenzo's oral argument, just now you heard her state that the, refer to the taxes on the building are delinquent versus the taxes, you know, me taking the position that the taxes on the building are delinquent versus the taxes of the person are delinquent and saying they're the same thing. That mischaracterizes my argument, all right? It's not so much about whether at the time of application, Pete Ross qualified as somebody whose taxes are delinquent, okay? I've never contested that her taxes, pursuant to this tax code argument that the defendant has made, became delinquent as of the point in time at which she signed on the dotted line and acquired the property. The problem is that that's not enough under the statute. That's not enough to satisfy a mandatory underwriting rule. She has to be both a person whose taxes are delinquent for the requisite period of time and one whose taxes have been delinquent for the requisite period of time. Now, granted, she probably became liable for the taxes as of the moment she acquired it. But I think we have to look back in time through the two-year period, which begins May 30th of 2017 years, two years before she bought it. Consider, for instance, as of, I don't know, January 1st of 2018, which falls within that period, were Pete Ross's taxes delinquent as to the house, which is what the statute contemplates at that time, when she hadn't bought it, wasn't living there, didn't know about it, and probably had no idea who Seabrook Harris was. Same question for six months later, mid-2018, end of 2018, early 2019. During all these periods of time, she knew nothing about that house. And are we to believe then that she was a person whose taxes at each of those points in time were delinquent as to this house? It's a ridiculous argument. By way of background, since you've raised what she knew when, at the time that your client closed on her purchase of the house, how was it that she didn't have an opportunity to find out about the unpaid taxes as a part of the closing documents or the title insurance commitment that should have shown any liens on the property? Was that information not properly on the house closing documents at the time of the transaction? How was it that she didn't obtain that information at that time? All I've seen, Your Honor, is a deed. I think this was a low-dollar value house. It was something like $7,000. And I believe she testified that Harris indicated to her that everything was right, and she believed it, maybe naively. Again, the statute sets forth what the insurance company can use to screen people from insurance, and there's no requirement in there that she go, for instance, do a search at the Register of Deeds. Under the statutory scheme, applicants are allowed to be naive. And I would have made sure they were paid. She didn't. But, again, for the preceding two years, there's nothing that indicates that she was, you know, that she had anything to do with the house, much less that her taxes asked for the house were delinquent. I guess the other point I would make about all this private cause of action, yeah, it's a breach of contract action. Michigan has, by way of example, a standard form statute that dictates the standard form of the policy. I don't know if there's a private cause of action under that either, but the fact that you're insisting, for instance, that the policy cover a fire, which a statute requires, doesn't mean that your claim is gone because you're citing a statute. We're citing a statute, but it's a breach of contract claim. I think we're – Liberty has failed to comply with the statute. It's acting in violation of the statute, and you can't – it's asking for equitable relief. And this court sitting is a court of equity. Equity cannot be used to violate a statute or to otherwise violate the law. It also violates public policy. I'm happy to entertain any questions the court may have. Apparently no further questions. Mr. McRae, we'd like to thank you and Ms. DiLorenzo for your arguments today and participating by way of Ozone. And Ms. DiLorenzo, we certainly appreciate your participation. While you're recovering from this health episode, wish you the best in that recovery. Case will be taken under submission.